IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEFANIE O.,[1]

        Plaintiff,                           Civ. No. 3:21-cv-1302-MC

     v.                                     **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

        **Defendant.**

_____

**MCSHANE, Judge**:

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security disability insurance benefits under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's subjective symptom testimony, and (2) failing to address the opinions of the state agency reviewing psychologists regarding Plaintiff's ability to take criticism from a supervisor. Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for benefits on October 27, 2017, alleging disability as of October 12, 2015. Tr. 13. Following an August 2019 hearing, an ALJ determined Plaintiff was not disabled in a November 2019 decision. Tr. 13. Plaintiff sought review from the Appeals Council, who remanded the matter for an ALJ to, amongst other things, "provide an adequate evaluation of the claimant's mental impairments." Tr. 248. On remand, following another hearing in October 2020, a second ALJ found Plaintiff not disabled under the Act. Tr. 13-33. Plaintiff now seeks judicial review of the ALJ's decision.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Plaintiff contends the ALJ erred in discounting her subjective statements about her limitations. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090; 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and

generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

At the October 2022 hearing, Plaintiff testified that for the past few months, she had successfully worked at the front desk of a hotel.[2] Plaintiff reported no difficulty with answering the phones or checking people in or out of the hotel. Tr. 61. Before working at the hotel, Plaintiff worked for several months as a receptionist at a law office before being terminated due to the employer's lack of work and Plaintiff's need for additional training. Tr. 62. Plaintiff also worked for five or six months at a clothing store. Tr. 62. Plaintiff stated she quit because the work hurt

---

[2] Due to Plaintiff's successful return to the workplace, Plaintiff confirmed she did not seek benefits beyond July 8, 2020. Tr. 54.

4 – OPINION AND ORDER

her back and shoulders and "it was mentally way too much for me. There was too much drama, too much just—I'll be totally frank with you. Just too much bullshit and negativity and—with the coworkers. Too much anxiety for me." Tr. 62. Plaintiff testified she quit other jobs due to pain, tr. 63, was fired when the employer eliminated her position following a worker's compensation claim, tr. 64, and once quit to have parenting time with her youngest daughter, tr. 65. Plaintiff testified she quit other jobs "to get a better job closer to home," to get benefits, or because "it was a godforsaken miserable job." Tr. 67.

Plaintiff testified she quit work just prior to her alleged onset date due to pain in her right wrist and because "my brain was just frazzled." Tr. 68. Plaintiff stated:

> Well, my right wrist was just excruciatingly painful all the time. Anytime I tried to write or type, it would just—it was unbearable. I couldn't cook. I couldn't barely hold a spoon. I had my kids doing all the cooking, doing all the chores around the house. I mean, I couldn't even do a button.

Tr. 69.

Plaintiff also had mental impairments, including PTSD and "nonstop anxiety . . . . I also have difficulties holding my temper and not losing my cool." Tr. 70. Plaintiff testified neck surgery in 2015 and back surgery in 2017 helped, but did not resolve, her pain. Tr. 71. Plaintiff testified that her gastroparesis causes "horrible abdominal cramps" causing her to "spend[] lots of time in the bathroom." Tr. 73.

Plaintiff stated that from her onset date until 2019, she was unable to do daily chores or activities, and could not partake in any hobbies or interests. Tr. 77. Plaintiff testified:

> I couldn't grip anything with my right hand. With my back, I mean, there was no lifting of anything. There was no bending over. I could bend over to pick up something off the floor, light, like my pair of pajama pants, and my back would pop, and that would be it, and I'd be down on my back for a week or two. My back's gone out with me spitting out my toothpaste.

Tr. 77.

5 – OPINION AND ORDER

Plaintiff testified that her main issues with respect to her more recent unsuccessful work attempts consisted of tension with coworkers:

> I had more difficulties with people. If they gave me a list of tasks to do, and left me alone to do them, as long as the tasks were physically feasible, that's not so bad. It's the fact that they don't leave me alone. . . . It's the people and the attitudes that I don't do so well with. . . . The drama, the gossip, the backfighting.

Tr. 79.

The ALJ found Plaintiff had the following severe impairments: cervical and lumbar spine disorder with history of cervical and lumbar fusion (December 2016, May 2017); inflammatory arthritis; right shoulder tendinopathy with atrophy; history of knee pain/joint disorder with benign bone lesions; Ehlers's Danlos syndrome by history (joint hypermobility syndrome); depression/affective disorder ADHD; PTSD; somatic symptom disorder; and history of alcohol abuse. Tr. 17. Despite these impairments, the ALJ found Plaintiff had the RFC to perform light work provided, as relevant here, that Plaintiff was limited to only occasional incidental public contact, occasional contact with coworkers, and no teamwork with coworkers. Tr. 21.

The ALJ did not reject outright Plaintiff's symptom testimony. Instead, the ALJ determined that while Plaintiff had severe limitations precluding her from anything other than limited light work, she was capable of doing more than she alleged. Tr. 23. The ALJ noted "the overall medical record, including imaging and nerve conduction studies, neuromuscular and rheumatoid examinations, is not consistent with the degree of disabling severity alleged." Tr. 23. In support, the ALJ noted the objective imaging studies "showed mainly mild, stable changes." Tr. 23. Regarding Plaintiff's complaints of right arm pain, the ALJ noted a July 2015 EMG nerve conduction study performed close to Plaintiff's alleged onset date "was normal without evidence of nerve entrapment or neuropathy" and Plaintiff's November 2017 MRI of her right extremity

6 – OPINION AND ORDER

was normal. Tr. 23-24. The ALJ pointed to normal results from imaging studies of Plaintiff's knees. Tr. 24.

The ALJ contrasted Plaintiff's symptom testimony with the results of Plaintiff's physical examinations, which revealed full motor strength, intact sensation and reflexes, and normal gait without the use of assistive devices. Tr. 24. The ALJ pointed to numerous physical examinations from September 2016 to 2020 indicating normal bulk, tone, strength and sensation in Plaintiff's extremities. Tr. 24. The ALJ also pointed to the February 2016 independent medical evaluation related to Plaintiff's right arm and wrist. Although that examiner concluded Plaintiff had some tenderness to palpation near the right arm and wrist, the ALJ noted that examination revealed "no crepitus, full range of motion in the shoulder, elbow and fingers, symmetric reflexes and intact sensation in the upper extremities bilaterally. Tr. 24. The ALJ further summarized that examiner's evaluation:

> Notably, the examiner reported that claimant had "give-way weakness" (voluntary weakness) involving both upper extremities with "no objective findings," and "non-physiologic pain response with complaints of pain." The examiner diagnosed "chronic right upper extremity pain," with "symptom magnification," chronic pain syndrome, and "job dissatisfaction." Dr. Cox added that claimant's "subjective complaints are not consistent with the objective findings," and "symptom magnification behavior was evident . . . based on results of the pain status inventories and the non-physiologic exam findings."

Tr 24 (internal citations omitted).

The ALJ referenced the fact that Dr. Cox indicated that Plaintiff's "diagnosis of symptom magnification syndrome is not intended to discredit the subjective complaints of pain, its possible basis in organic pathology, or the existence of a certain degree of objective disability." Tr. 25. Again, the ALJ did not find that Plaintiff's right arm and wrist presented no limitations. Instead, the ALJ limited Plaintiff to light work with only occasional pushing and pulling with her right arm, and only occasional overhead reaching. Tr. 21. The ALJ pointed to Dr. Cox's findings

7 – OPINION AND ORDER

not to declare Plaintiff a malingerer with no credible reports of pain, but merely to support the finding that Plaintiff's reports of debilitating pain and limitations contrasted with the results of independent examinations. The ALJ pointed to multiple other evaluations and concluded Plaintiff's "generally mild and stable imaging, intact muscle bulk, tone, strength and range of motion do not support additional limitations" beyond light work with additional restrictions. Tr. 25 (internal citations omitted). Comparing and contrasting alleged symptoms with objective medical evidence is a permissible way of assessing the credibility of a claimant's testimony. *Lingenfelter*, 504 F.3d at 1040.

The ALJ also pointed to Plaintiff's activities of daily living and noted those activities "strongly indicate that her impairments would not preclude her from performing a limited range of light, unskilled work[.]" Tr. 27. Despite alleging debilitating chronic pain and mental symptoms, the ALJ noted Plaintiff was able to complete light household chores, fix simple meals, care for her three dogs and two cats, and attend medical and counseling appointments:

> Further, although claimant alleges difficulties in social interactions and problems getting along with others, she indicated that she has friends and testified that she has been working in sales/customer service since May 2019, working three to four days a week. While she alleges problems with ADHD/attention deficit, memory, concentration/focus, she indicated that she gets up at 4:00am, goes to work at 7:45am, and drives herself to and from work, a 45-minute drive each way, and works full, 8-hour days. . . . In November 2019, she was able to take a phlebotomy class without "too much" difficulty. She spent a month on an 18-wheeler with her husband in 2020, which suggest[s] an ability to adjust to new situations.

Tr. 27 (internal citations omitted).[3]

---

[3] The ALJ also pointed to the fact that upon examination, Plaintiff generally: "demonstrated good memory and logical thought process;" presented as "pleasant and cooperative, with a normal mood and affect;" "displayed good attention and concentration with the ability to perform calculations and serial 7 subtractions;" and arrived to appointments "appropriately groomed, [with a] pleasant attitude." Tr. 20-21 (internal citations omitted).

8 – OPINION AND ORDER

Finally, the ALJ pointed to the fact that—during the time period she sought benefits—Plaintiff engaged in substantial gainful activity during the third quarter of 2019 and the second quarter of 2020.[4] Tr. 16. The ALJ found that based on Plaintiff's own testimony, Plaintiff quit those jobs for reasons other than her impairments and thus those periods did not qualify as unsuccessful work attempts. Tr. 16-17.

The ALJ did not err in utilizing "ordinary techniques of credibility evaluation" in weighing the validity of Plaintiff's self-reported limitations. *Ghanim*, 763 F.3d at 1163; *Lingenfelter*, 504 F.3d at 1040. Although Plaintiff argues another interpretation of the record is reasonable, that is not a legitimate reason for overturning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner.") (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))). Because the ALJ provided "specific, clear and convincing reasons" for finding Plaintiff less-than credible regarding the extent of her limitations, the ALJ did not err in giving little weight to Plaintiff's testimony regarding those limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273,1282 (9th Cir. 1996)).

Plaintiff next argues that the ALJ's RFC is not supported by substantial evidence because the ALJ "failed to properly address Plaintiff's difficulty interacting with and accepting criticism from supervisors." Pl.'s Br. 5; ECF No. 16. Specifically, Plaintiff argues that because the ALJ found the opinions of the agency reviewing psychologists persuasive, the ALJ erred in not including in either Plaintiff's RFC or the hypothetical to the VE the psychologists' opinion that

---

[4] Although Plaintiff engaged in substantial gainful activity from August 2020 on, this was one month after the time period Plaintiff sought disability benefits.

9 – OPINION AND ORDER

"[Plaintiff] is capable of accepting criticism if given in a productive manner and in private." Pl.'s Br. 5 (citing Tr. 179, 209). Plaintiff argues:

> [W]hile there are jobs where one can work relatively independently of coworkers and away from the public, virtually every job requires interaction with a supervisor. An inability to respond appropriately to a supervisor's direction *unless it is given in a particular way* is a significant limitation which should have, at the very least, been presented to the vocational expert to determine whether it impacted the ability to sustain competitive employment. The ALJ erred in failing to do so here.

Pl.'s Br. 5-6.

Plaintiff is correct that while the ALJ discussed the reviewing psychologists' opinions and found them well supported, consistent with the overall record, and "persuasive," the ALJ did not specifically address the opinion that Plaintiff "is capable of accepting criticism if given in a productive manner and in private." Instead, the ALJ noted the state psychological evaluators:

> Assess[ed] the claimant as having no worse than mild to moderate limitations due to her mental impairments, and concurred that she could perform simple, unskilled work with some limited social interaction. The psychological evaluators concurred that claimant is "capable of carrying out and maintaining [concentration, persistence, and pace] for simple/repetitive tasks but not for more complex tasks." They further opined that claimant is limited to only incidental contact with the general public, no more than occasional superficial coworker interaction, and is "capable of sustaining socially appropriate behavior but would do better if working more independently."

Tr. 29-30 (internal citations omitted).

To the extent the ALJ erred, any error was harmless. The ALJ limited Plaintiff to work involving simple, repetitive tasks, with only occasional incidental public contact, occasional contact with coworkers, and no teamwork with coworkers. Tr. 21. Based on the VE's testimony, the ALJ ultimately concluded Plaintiff was capable of performing the occupations of table worker, bench hand, and masker. Tr. 32. First, the state agency psychologists did not indicate Plaintiff would have any limitations in responding to ordinary supervision in the workplace. Instead, those opinions referred to Plaintiff's ability to respond to "criticism." Plaintiff provides

10 – OPINION AND ORDER

no support for her argument that she would be subjected to any "criticism" at all in any of the three relevant occupations. Instead, as pointed out by the Commissioner, the DOT provides that the occupations of table worker (available at 1991 WL 680217), bench hand (available at 1991 WL 679344), and masker (available at 1991 WL 679424) each require a "not significant" level of "taking instructions." Def. Resp. 12 (and listing district court cases concluding the occupations can be performed with only superficial supervisor interaction and "minimal" contact with supervisors). Finally, the Court agrees with the Commissioner in that "a limitation to private and productive supervisor criticism would not prevent the occupations of bench hand, table worker, and masker, as they already occur in settings without teamwork or public interaction, without more than minimal and superficial supervision, and without more common sense than is needed for two-step tasks." Def. Resp. 13. For those reasons, to the extent the ALJ erred at all, any error was harmless.

## CONCLUSION

The ALJ's decision supported by substantial evidence and, to the extent the ALJ erred, the error was harmless. The Commissioner's final decision is therefore AFFIRMED. IT IS SO ORDERED.

DATED this 14th day of March, 2023.

/s/ Michael McShane
Michael J. McShane
United States District Judge

11 – OPINION AND ORDER